This suit grows out of a collision between an automobile and a bicycle which took place shortly after five o'clock of the afternoon of September 5, 1941, on Railroad Avenue in the City of Lake Charles. The automobile involved was of the type known as a station wagon and belonged to the defendant, Mordelo L. Vincent, Jr. It was being driven by his employee, a negro by the name of Murphy Dugas, and was also occupied by Mr. Vincent's little girl and by Edna Dugas, Murphy's wife and Ethel Young, a negro nurse who had with her a young white child of Oliver Stockwell, a Lake Charles attorney. Luther Hall was riding along the street on his bicycle and claims that through the gross negligence of Dugas, the station wagon driver, it was run into from the rear and that he sustained the damages for which he is suing his employer. The necessary allegation that Dugas was acting at the time within the course and scope of his employment was made and that is not a controverted issue.
Both the wagon and the bicycle were proceeding west on the right hand side of Railroad Avenue. Plaintiff alleges that when he had reached a point approximately 50 feet east of Kirkman, an intersecting street, and was about a foot or a foot and a half from the north curb of Railroad Avenue, his bicycle was struck from the rear by the station wagon and that the force of the blow was sufficient to knock him to the street on which he hit the back of his head and also hurt his back. He charges the driver of the wagon with gross negligence in failing to observe the rules of the road and to keep a proper look-out. His demand is for $500 of which $295 is for pain and suffering caused by his injuries, $200 for loss of time from work as a longshoreman and $5 for damage to his bicycle. He further asks that in the event he be made to pay for the medical treatment he received that he recover the additional sum of $50 in order to cover the same.
The defense is a denial of the negligence charged to the driver of the station wagon and the counter charge that the accident was caused solely and entirely through the gross fault, carelessness and negligence of the plaintiff himself who turned his bicycle sharply to the left and ran into the rear of the right side of the station wagon after it had safely passed him three quarters of its length. Defendant further denies that in the collision which did take place either the plaintiff himself or his bicycle was injured or damaged to any extent whatever and then in the alternative, he pleads contributory negligence on the plaintiff's part as a bar to his recovery.
After trial, the district judge, for the well considered and prepared written reasons handed down, rendered judgment in favor of the defendant and against the plaintiff rejecting the latter's demands at his costs. Plaintiff has appealed.
Besides the plaintiff and the two women who were in the station wagon there were two other negro witnesses who testified that they also had seen the accident. These were John Towner and John Wesley. Dugas, the driver of the wagon died before the case was tried or before suit was filed and his version of it was never given.
The witness Wesley testified that he was sitting on the corner of Kirkman Street and Railroad Avenue, about 60 or 70 feet from where the collision took place. He could see Hall riding his bicycle and all at once he saw "a station wagon come up and hit the fellow from behind, hit him from the back." The force of the blow knocked him to the ground and he fell towards the railroad, on the curb. He knew the plaintiff, as they worked together on the docks, recognized him as the one who was riding the bicycle and although he thought he was hurt badly enough to have a broken back, he did not go to assist him because, he says, the driver of the station wagon had helped him up and he knew he couldn't do anything to help.
Towner says that he was coming down Railroad Avenue, going west. He was on his way to a drug store almost opposite the point where the collision occurred and was waiting for traffic to pass so that he could cross the street. He saw Hall going ahead on his bicycle and a station wagon coming behind him, bumped into him from the back. The right front fender struck him and knocked him down. On cross-examination he stated that Hall fell from off on the left hand side of the bicycle. Although this witness also was acquainted *Page 339 
with the plaintiff and saw him in this accident, he neither, went to his assistance because, he says, it was no concern of his.
Plaintiff's version of the accident is that he was riding his bicycle down Railroad Avenue, on the right hand side going west, when all at once the automobile struck him and he fell backwards. The driver of the station wagon stopped immediately and came to him and asked if he was hurt. He told him that he was and then asked him how had he come to run into him, to which he replied: "I don't know what I was thinking about."
Edna Dugas testified that she was sitting on the front seat of the station wagon with her husband and a little child of Mr. Vincent's. She saw plaintiff on his bicycle, going the same direction they were. The station wagon passed him and right after it did, heard Ethel Young, who occupied the rear seat of the wagon, say "Look, we hit somebody." She says that they were driving at about fifteen miles an hour; that her husband stopped the wagon immediately and went to see what had happened. Hall said he was not hurt, but her husband, to make sure, took him to Dr. Moss office to be examined, but Dr. Moss was out at that moment. They then returned to the scene of the accident where Hall got out of the station wagon, took his bicycle and went on. She says that on the way to the doctor's office plaintiff stated that his handle bar turned in and rubbed the right side of the station wagon and that was what caused him to fall off.
Ethel Young stated that she did not see either vehicle hit the other but that at the time that part of the station wagon which she occupied was even with Hall, he looked up. She then heard a noise on the pavement and as she looked out she saw Hall in a sitting position and his bicycle, both in the street. She shouted to Dugas, the driver, and he stopped and ran back to Hall who in the meantime got up and sat on the curb. She did not see anyone help him and as he got in the station wagon she asked him if he was hurt to which he replied "I don't think so — I was so nervous I didn't know what had happened."
The remaining testimony in the case has reference to the loss of time at work plaintiff claims on account of his injuries and to the extent of the injuries he sustained, if any.
From that part of it which we have summarized, and which relates to the accident itself, the district judge was left in doubt for one thing, as to the manner in which the collision took place for he states in his written reasons for judgment: "It has not been shown to the satisfaction of this court, in the first place, that there was a collision between the front end of the right front fender of the station wagon and the rear end of the bicycle." On the conflict which appears on this point we do not know how he could have felt otherwise. The difference in the statement of plaintiff's two witnesses with regard to the direction in which he fell from off his bicycle is sufficient to cast some doubt on their testimony. Wesley says that he fell on the right side, next to the curb, whereas Towner says he fell to his left. If the latter's observation was correct it is difficult to understand how he was not run over by the moving station wagon or at least was not struck by it or how he did not fall against it. The rest of their testimony as well as that of the plaintiff himself cannot possibly be reconciled with that of the two witnesses for the defendant and with such conflict prevailing we are left in as great doubt as was the learned trial judge on how the collision actually took place.
In cases such as this the invariable rule is to uphold the findings of fact of the trial court unless clear and manifest error appears. There is no such error here and the judgment appealed from which rejected the plaintiff's demand is held to be correct.
Judgment affirmed; appellant to pay all costs. *Page 485